UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | Case No. 1:09-cr-146 |
| | . | |
| Plaintiff, | . | |
| | . | *Arraignment and Plea* |
| - v - | . | |
| | . | Tuesday, October 13, 2009 |
| KEITH E. CORBIN, | . | 2:25 PM |
| | . | |
| Defendant. | . | Cincinnati, Ohio |

. . . . . . . . . . . . . . . .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE HERMAN J. WEBER, SENIOR JUDGE


For the Plaintiff:     MACHELLE L. JINDRA, ESQ.
                       KEVIN C. CULUM, ESQ.
                       United States Department of Justice
                       Antitrust Division
                       Carl B. Stokes U.S. Court House
                       801 West Superior Avenue, 14th Floor
                       Cleveland, Ohio  44113-1857


For the Defendant:

LAWRENCE S. LUSTBERG, ESQ.        MARY JILL H. DONOVAN, ESQ.
JENNIFER MARA, ESQ.               Donovan Law
Gibbons PC                        910 Race Street
One Gateway Center                Cincinnati, Ohio  45202
Newark, New Jersey  07102-5310


Also present:          Laurie Cooke, Pretrial Services
                       Laura S. Jensen, Probation Officer


Law Clerk:             Amy Peters Thomas, Esq.


Courtroom Deputy:      Darlene Maury


Court Reporter:        Luke T. Lavin, RDR, CRR
                       838 Potter Stewart U.S. Courthouse
                       100 East Fifth Street
                       Cincinnati, Ohio  45202


*Proceedings recorded in stenotype;*
*transcript prepared by computer.*

```
1                          P R O C E E D I N G S

2        (In open court at 2:25 PM.)

3             THE COURT:  Proceed, Ms. Maury.

4             COURTROOM DEPUTY:  Judge, on the docket this

5    afternoon --

6             THE COURT:  Please be seated.

7             MR. LUSTBERG:  Thank you, Your Honor.

8             COURTROOM DEPUTY:  -- is Criminal Action 09-146,

9    United States of America versus Keith Corbin.  Appearing on

10   behalf of the government is Kevin Culum and Machelle Jindra.

11   Appearing on behalf of the defense is Lawrence Lustberg,

12   Jennifer Mara, and Mary Jill Donovan, and the defendant is

13   present in the courtroom.

14            THE COURT:  Mr. Culum, I have a motion here, I think

15   signed by you, requesting the case be unsealed.

16            MR. CULUM:  Yes, Your Honor.  And, Your Honor, Ms.

17   Jindra will be doing most of the talking today in Mr. Corbin's

18   case.

19            THE COURT:  I'm sorry I wore you out this morning.

20            MR. CULUM:  Well, I'm getting ready for the afternoon.

21            THE COURT:  Oh, okay.

22      The Court will order the documents unsealed.

23      Let's see.  Are you Mr. Keith Corbin?

24            THE DEFENDANT:  Yes, sir, I am.

25            MR. LUSTBERG:  Your Honor, do you want Mr. Corbin to
```

1   rise when you address him?

2          THE COURT:  No.  I'm sorry.  This is going to be a

3   long session.  And I appreciate the input of lawyers greatly;

4   however, this is basically between me and Mr. Corbin.

5          MR. LUSTBERG:  No problem.

6          THE DEFENDANT:  Thank you, Your Honor.

7          THE COURT:  So we understand each other.  And you

8   rise, go to the lecturn if you prefer, make a great speech if

9   you prefer, but you may sit there as well.

10         MR. LUSTBERG:  That's what I'll do.

11         THE COURT:  Mr. Corbin, are you represented by a

12  lawyer?

13         THE DEFENDANT:  Yes, sir, I am.

14         THE COURT:  And what's your lawyer's name?

15         THE DEFENDANT:  Lawrence Lustberg.

16         THE COURT:  All right, sir.

17     Mr. Lustberg, have you explained to your client his right

18  to have the matter considered by the grand jury?

19         MR. LUSTBERG:  Yes, Judge.

20         THE COURT:  And what's your advice to your client?

21         MR. LUSTBERG:  I advised him to waive indictment and

22  to proceed by way of Information.

23         THE COURT:  Did you explain to him the charge that

24  he's facing in this matter?

25         MR. LUSTBERG:  I did, Judge.

1          THE COURT:  Mr. Corbin, do you have any question about

2     the charge in this Information?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Just so -- we're going to read it at some

5     time during this proceeding, and we'll read it at this time.

6     So if you'll please listen as the Assistant U.S. Attorney

7     presents the charge to the record of the Court.

8       Ms. Jindra, do you want to proceed.

9          MS. JINDRA:  Thank you, Your Honor.

10      United States of America, Plaintiff, versus Keith E.

11    Corbin, Defendant.  The Information.

12      Heading:  Conspiracy To Restrain Trade, 15 U.S.C. Section

13    1.

14      The United States of America, acting through its attorneys,

15    charges:

16      Paragraph 1:  Keith E. Corbin is hereby made a defendant on

17    the charge stated below.

18      Roman numeral I.  Heading:  Description Of The Offense.

19      Paragraph number 2.  Beginning at least as early as March

20    1st, 2005, and continuing until at least July 17th, 2007, the

21    exact dates being unknown to the United States, the defendant

22    and co-conspirators entered into and engaged in a conspiracy to

23    suppress and eliminate competition by allocating packaged-ice

24    customers in southeastern Michigan and the Detroit, Michigan,

25    metropolitan area.  The charged conspiracy unreasonably

1   restrained interstate trade and commerce, in violation of

2   Section 1 of the Sherman Act, 15 U.S.C. Section 1.

3       Paragraph number 3.  The charged conspiracy consisted of a

4   continuing agreement, understanding, and concert of action

5   among the defendant and co-conspirators, the substantial terms

6   of which were to allocate packaged-ice customers in

7   southeastern Michigan and the Detroit, Michigan, metropolitan

8   area.

9       Roman numeral number II.  Heading:  Means And Methods Of

10  The Conspiracy.

11      Paragraph number 4.  For the purposes of forming and

12  carrying out the charged conspiracy, the defendant and

13  co-conspirators did the following things, among others:

14      (a) participated in conversations to discuss packaged-ice

15  customers in southeastern Michigan and the Detroit, Michigan,

16  metropolitan area;

17      (b) agreed, during those conversations, to allocate

18  packaged-ice customers in southeastern Michigan and the

19  Detroit, Michigan, metropolitan area;

20      (c) exchanged information during those conversations, for

21  the purpose of monitoring and enforcing adherence to the

22  agreements to allocate customers in southeastern Michigan and

23  the Detroit, Michigan, metropolitan area; and

24      (d) refrained from competing for packaged-ice customers

25  that were so allocated.

1    Roman numeral III.  Heading:  Defendant And

2  Co-Conspirators.

3    Paragraph number 5.  Beginning at least as early as March

4  1st, 2005, and continuing until at least September 1st, 2006,

5  the defendant was the vice president of sales and marketing of

6  Artic Glacier International Incorporated, which is a

7  corporation organized and existing under the laws of the state

8  of Delaware and does business in multiple states, with its

9  principal place of business in St. Paul, Minnesota.

10    Paragraph number 6.  Various individuals and corporations,

11  not made defendants in this Information, participated as

12  co-conspirators in the offense charged and performed acts and

13  made statements in furtherance of it.

14    Roman numeral number IV.  Trade And Commerce.

15    Paragraph number 7.  During the period covered by this

16  Information, the defendant and co-conspirators:  (1)

17  manufactured packaged ice; (2) distributed packaged ice to

18  retailers in southeastern Michigan and the Detroit, Michigan,

19  metropolitan area; and (3) caused packaged ice to be purchased

20  from, sold to, or distributed from or to, individuals and

21  companies located inside and outside of southeastern Michigan

22  and the Detroit, Michigan, metropolitan area.

23    Paragraph number 8.  During the period covered by this

24  Information, substantial quantities of packaged ice

25  manufactured and sold by the defendant was shipped across state

1   lines in a continuous and uninterrupted flow of interstate

2   trade and commerce.

3       Paragraph number 9.  The business activities of the

4   defendant and co-conspirators that are the subject of this

5   Information were within the flow of, and substantially

6   affected, interstate trade and commerce.

7       Roman numeral number V.  Venue.

8       Paragraph number 10.  The conspiracy charged in this

9   Information was formed and carried out within the Southern

10  District of Ohio, Western Division.  At least one of the

11  conspiratorial discussions described above took place in

12  Cincinnati, Ohio, which is located within the Southern District

13  of Ohio.  Acts in furtherance of this conspiracy were carried

14  out within the five years proceeding the filing of this

15  Information.

16      All in violation of Title 15, United States Code, Section

17  1.

18      The Information is signed by Christine A. Varney, Assistant

19  Attorney General; Scott D. Hammond, Deputy Assistant Attorney

20  General; Marc Siegel, Director of Criminal Enforcement, all for

21  the Antitrust Division.  It's also signed by Scott Watson,

22  chief of the Cleveland field office, and Kevin C. Culum, an

23  attorney with the Antitrust Division.

24          THE COURT:  Mr. Corbin, do you have any questions

25  about this Information?

1                THE DEFENDANT:  No, Your Honor.

2                THE COURT:  Has Mr. Lustberg explained it --

3          I'm sorry if you can't hear.  I'll get this -- is that

4    better?

5                THE DEFENDANT:  Yes, that's fine.  Thank you.

6                THE COURT:  Okay.  Has Mr. Lustberg explained to you

7    the meaning of this charge and answered your questions

8    concerning it?

9                THE DEFENDANT:  Yes, he has, Your Honor.

10               THE COURT:  All right.  Now, please understand that by

11   proceeding with this case without the consideration by the

12   grand jury does not void you or does not take away from you any

13   of your other constitutional rights.  You still have the right

14   to plead not guilty.  You have the right to be tried by a jury.

15   You have a right to be represented throughout the proceedings,

16   the trial and afterwards, by counsel.  You have a right to face

17   the prosecution witnesses.  You have the right to compel

18   witnesses to come in and testify as you wish, and the United

19   States must prove your guilt beyond a reasonable doubt to

20   strike away from you the cloak of presumption of innocence.

21          So please understand that all you're giving up at this time

22   in this proceeding is the right to have the matter considered

23   by the grand jury before you can be tried or handled in this

24   court.

25          Now, do you have any questions about your rights to have

1    the grand jury consider your case?

2            THE DEFENDANT:  No, Your Honor.

3            THE COURT:  Do you feel you're acting in your own best

4    interest in this regard?

5            THE DEFENDANT:  Yes, I do, Your Honor.

6            THE COURT:  If it's your desire to proceed in this

7    manner and give up your right to have the grand jury consider

8    your case --

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  -- you may sign the written waiver that's

11   before you.

12       And, Mr. Lustberg, if you'll please explain it to him and

13   answer any of his questions.

14           MR. LUSTBERG:  Your Honor, for the record, we've

15   reviewed this document thoroughly and he completely understands

16   it.

17           THE COURT:  Let the record show I'm observing the

18   defendant Mr. Corbin sign the waiver here in open court.

19       Do you have any questions at this time about this part of

20   the proceedings?

21           THE DEFENDANT:  No, sir, I don't.

22           THE COURT:  And this is your signature on the

23   document?

24           THE DEFENDANT:  Yes, it is.

25           THE COURT:  The Court will accept the waiver of the

1    indictment and will proceed on the basis of the charge

2    contained in the Information.

3        Now that the charge in the Information has become the

4    charging document in this case, how do you plead to the charge,

5    sir?

6                THE DEFENDANT:  Guilty, Your Honor.

7                THE COURT:  Before accepting your plea of guilty, I

8    must determine that it is made voluntarily, with understanding

9    of the nature of the charge and the consequences of the plea.

10   By offering to plead guilty, you do give up certain of your

11   constitutional rights.  This must be an intentional giving up

12   of rights and privileges that you now have.

13       Please understand that I need not accept your plea unless

14   satisfied of your guilt and that you fully understand your

15   rights.  In order to make this determination, I must ask some

16   questions.  Before I do, it's necessary that you obligate

17   yourself to tell the truth.  Once having been sworn, your

18   answers to my questions will be subject to the penalties of

19   perjury, of making a false statement, or possibly contempt of

20   court if you do not answer truthfully.

21       Are you willing to accept the obligation to tell the truth?

22               THE DEFENDANT:  Yes, I am, Your Honor.

23               THE COURT:  Would you swear the witness.

24               THE DEFENDANT:  I certainly will.

25               COURTROOM DEPUTY:  Mr. Corbin, please stand and raise

1    your right hand.

2        (The defendant was duly sworn by the courtroom deputy.)

3            COURTROOM DEPUTY:  Thank you.  Be seated.

4            THE COURT:  Mr. Corbin, how old are you, sir?

5            THE DEFENDANT:  74 years old.

6            THE COURT:  And how much education do you have?

7            THE DEFENDANT:  I finished high school.

8            THE COURT:  We're conversing in the English language?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Can you understand me?

11           THE DEFENDANT:  Yes, I can, sir.

12           THE COURT:  I can understand you.  Have you taken any

13   narcotic drug, medicine or pills or drunk any alcoholic

14   beverages in the past 24 hours?

15           THE DEFENDANT:  I've taken some drugs, Your Honor,

16   some medication.

17           THE COURT:  And can you tell me what those medications

18   are, what they're for, however you want to --

19           THE DEFENDANT:  I don't know the names of them.  One

20   of them is Advair, and it's to help my breathing.  I take a

21   pain pill because I have a serious problem with my leg and hip

22   hurting when I walk.  I take another one, I have an enlarged

23   prostate, that helps hold it down so that it helps my bladder

24   get through.  I take another one that helps reduce my

25   cholesterol.  I have another one that -- I have a drip that I

1    have to -- nose drops.  I have to take two every morning to

2    make sure that my head won't -- it will start me coughing all

3    the time.

4        I think that's it.

5            THE COURT:  How did you come here this morning?

6            THE DEFENDANT:  I flew here, sir.

7            THE COURT:  You flew in?

8            THE DEFENDANT:  From Nashville, Tennessee.

9            THE COURT:  I see.  Did you have any trouble making

10   that trip?

11           THE DEFENDANT:  No, sir, I didn't.  Just my leg

12   swelled up.

13           THE COURT:  And you handled your own baggage or

14   problems and so on?

15           THE DEFENDANT:  No, I had no baggage.  It's just going

16   to the ticket counter and get on the plane.

17           THE COURT:  You didn't get lost or anything?

18           THE DEFENDANT:  I almost did in Cincinnati.  I hadn't

19   been in that airport.  It's huge.  Besides that, I had a hard

20   time finding my attorney.

21           THE COURT:  What we're trying to get at is, are you

22   able to reason and discuss this situation --

23           THE DEFENDANT:  Absolutely.

24           THE COURT:  -- with me?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you wish to develop the point any

2   further?

3          MS. JINDRA:  No, Your Honor.

4          THE COURT:  Mr. Lustberg, do you have any doubt as to

5   the competency of the defendant to plead at this time?

6          MR. LUSTBERG:  No doubt whatsoever, Your Honor.

7          THE COURT:  Mr. Corbin, you recall we just read

8   together the charge in this case in the Bill of Information --

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  -- just a few moments ago.

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Do you understand the nature and meaning

13  of this charge?

14         THE DEFENDANT:  Yes, I do, Your Honor.

15         THE COURT:  Have you told your lawyer everything you

16  know about this case?

17         THE DEFENDANT:  I have, Your Honor.

18         THE COURT:  Do you believe your lawyer is fully

19  informed about the facts and circumstances on which this charge

20  is based?

21         THE DEFENDANT:  Yes, I do, Your Honor.

22         THE COURT:  Has your lawyer fully informed counsel and

23  advised you on the nature and meaning of the charges?

24         THE DEFENDANT:  Yes, he has, Your Honor.

25         THE COURT:  Now, before you can be found guilty of

 1   this charge, the United States must prove to a panel of jurors

 2   that we'll select at random, you and I will help select those

 3   people that will judge us, and the government must prove to

 4   this jury beyond a reasonable doubt certain things, or

 5   elements, as we call them.

 6       And the elements that the government must prove in this

 7   case, and which the jury must find beyond a reasonable doubt

 8   that you did, are these:  that the conspiracy, agreement, or

 9   understanding described in the Information --

10       And we just read that.  It was this deal with the ice and

11   so forth up in Michigan.

12       -- was knowingly formed and was existing at or about the

13   time alleged in the Information, and that was, I believe, March

14   2005 to July 17th, 2007.

15       Now, when did you retire from Artic?

16           THE DEFENDANT:  Actually, about two-- the latter part

17   of 2005, 2006.  I stayed on their payroll, but that was part of

18   my retirement package, sir.

19           THE COURT:  Were you active during that period of

20   time?

21           THE DEFENDANT:  Not really.  I answered questions

22   sometimes if I'd get a call, but not really, to the best of my

23   knowledge.

24           THE COURT:  I see.  And the next element is that you

25   knowingly became a member of the conspiracy agreement or

1    understanding as charged and that the conspiracy constituted an

2    unreasonable restraint of interstate commerce, and the offense

3    was carried out, in part, in the Southern District of Ohio

4    within five years preceding the filing of the Information.

5         Now, the Southern District of Ohio is roughly the southern

6    half of Ohio.  If you draw a line just north of Columbus from

7    the east to the west border, the Southern District of Ohio lies

8    from there to the river, Ohio River.  And, for example,

9    Cincinnati, Hamilton County, Butler, Hamilton city, Lebanon,

10   Clermont County, are all in the Southern District of Ohio, as

11   an example.

12        Now, do you understand that if you plead guilty, you will

13   admit beyond a reasonable doubt that you did these things?

14             THE DEFENDANT:  Yes, Your Honor, I do.

15             THE COURT:  Now, do you know what the maximum possible

16   penalty for this offense is?

17             THE DEFENDANT:  My attorney has told me.

18             THE COURT:  What is it?  I'm sorry.  What is it?

19             THE DEFENDANT:  A term of imprisonment for ten years

20   and a fine.  Do you want me to read the whole thing?

21             THE COURT:  I just want you to tell me what the

22   maximum penalty is, because I've got to satisfy myself that you

23   know what it is, because I might sentence you to it.

24             THE DEFENDANT:  Ten years and a million dollars' fine,

25   sir.

1          THE COURT:  And there is also two times the gross

2    pecuniary loss and gain.

3          THE DEFENDANT:  Yes.

4          THE COURT:  There's three years of supervised release,

5    there's a hundred dollar special assessment, and there's

6    restitution.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And the importance of supervised release

9    is this, that at the time of sentencing, if you're sentenced to

10   the penitentiary, there will also be assigned a period of

11   supervised release of up to three years.  At the time of

12   sentencing conditions will be placed on your conduct during the

13   time of supervised release.  If you should violate those

14   conditions during the term of supervised release, you could be

15   recommitted to the penitentiary for a period of time, and I

16   believe, under the facts of this situation, as much as two

17   additional years.  So under the worst set of circumstances,

18   from your point of view, you could serve as many as 12 years in

19   the penitentiary.

20       Do you have any understanding or question about that?

21          THE DEFENDANT:  No.  My attorney explained that to me.

22          THE COURT:  I wish that the court of appeals would let

23   me accept his representation that he did, but I can't.  I've

24   got to go through this.

25          THE DEFENDANT:  I understand, sir.

1          THE COURT:  And my problem is that I want to be sure

2     that I know that you know.

3          THE DEFENDANT:  (Nods head up and down.)

4          THE COURT:  And so I appreciate your comment, and I'm

5     glad your attorney did advise you of this so it isn't a

6     terrible shock to you today what we're facing.

7          THE DEFENDANT:  Your Honor, I think he's totally

8     advised me of everything.  We've gone over it many times.

9          THE COURT:  Thank you.

10       Now, I assume that since he has, that he's also discussed

11    the Sentencing Guidelines with you?

12         THE DEFENDANT:  Yes, he has, Your Honor.

13         THE COURT:  Now, what did he advise you about the

14    Sentencing Guidelines?

15         THE DEFENDANT:  That it was at the discretion of the

16    judge.

17       (Mr. Lustberg and the defendant confer privately.)

18         THE DEFENDANT:  According to the Guidelines, 12 to 18

19    months, but there were certain concessions.

20         THE COURT:  In other words, that you've worked out the

21    mathematics and it's 12 to 18 months, from your information?

22         THE DEFENDANT:  Yes.  My attorney worked it out.

23         THE COURT:  I see.  All right.

24       And are you aware that there is no parole in the Sentencing

25    Reform Act available to you in this type of situation?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  And do you understand that the Sentencing

3    Guidelines are just advisory?

4          THE DEFENDANT:  I do.

5          THE COURT:  That despite the Sentencing Guidelines

6    that they suggested, that I can impose a sentence that is more

7    severe or less severe than the Guidelines?

8          THE DEFENDANT:  My attorney so advised me of that

9    today, and I understand that totally.  It's your decision, Your

10   Honor.

11         THE COURT:  And you understand that under certain

12   circumstances, either you or the United States may appeal the

13   sentence imposed?

14         THE DEFENDANT:  Under certain circumstances, yes, sir.

15         THE COURT:  And that you may also lose your right to

16   vote.  I know you'll lose your right to possess firearms, serve

17   on jury duty, or hold public office.

18         THE DEFENDANT:  My attorney advised me of all these

19   facts, sir.

20         THE COURT:  Now, are you an American citizen?

21         THE DEFENDANT:  Yes, sir, I am.

22         THE COURT:  And please understand that after you are

23   sentenced, you have no right to withdraw your guilty plea; that

24   after you are sentenced, you have no right to withdraw your

25   guilty plea.

1          THE DEFENDANT:  I understand that, Your Honor.

2          THE COURT:  Now, do you understand that if I accept

3     your plea of guilty, I could impose a maximum penalty?

4          THE DEFENDANT:  Yes, sir, I certainly do.

5          THE COURT:  Now, since you know the maximum penalty,

6     do you still wish to plead guilty?

7          THE DEFENDANT:  Yes, sir, I do.

8          THE COURT:  Do you understand that if I accept your

9     plea of guilty, I may or may not place you on probation?

10         THE DEFENDANT:  Yes, sir, I totally understand that.

11         THE COURT:  I advise you that, under the Constitution

12    and laws of the United States, you have the right to plead not

13    guilty.  You have the right to be tried by a jury, and at such

14    a speedy and public trial you would have the right to the

15    assistance of a lawyer, the right to confront and cross-examine

16    witnesses against you, and the right not to be compelled to

17    incriminate yourself.  At such trial you would be presumed

18    innocent until such time, if ever, as the government

19    established your guilt by legal evidence beyond a reasonable

20    doubt.  At such trial you would be entitled to compulsory

21    process, to call witnesses on your behalf.

22      Do you understand that if you plead guilty, you give up all

23    these rights that I have mentioned?

24         THE DEFENDANT:  Yes, Your Honor, I do.  My attorney

25    explained it to me.

1          THE COURT:  Do you understand that if you plead

2    guilty, there will not be a further trial of any kind in your

3    case, so that by pleading guilty you are giving up the right to

4    a trial?

5          THE DEFENDANT:  Yes, Your Honor, I do.

6          THE COURT:  Do you understand that if your plea of

7    guilty is accepted, the judge can impose the same penalty as

8    though you pled not guilty, stood trial, and had been convicted

9    by a jury?

10          THE DEFENDANT:  Yes, Your Honor, I understand that.

11          THE COURT:  If you plead guilty, do you understand

12    that you'll also have to give up your right not to incriminate

13    yourself, since I'll have to ask you questions about what you

14    did in order to satisfy me that you are guilty as charged, and

15    you will have to acknowledge your guilt?

16          THE DEFENDANT:  I do, Your Honor.

17          THE COURT:  Are you willing to give up your right to a

18    trial and the other rights we've just discussed?

19          THE DEFENDANT:  Yes, Your Honor, I am.

20          THE COURT:  Proper plea agreements are permissible.

21    However, you and the lawyers have a duty to explain the plea

22    agreement to the record.  I'm going to ask the Assistant U.S.

23    Attorney to present the plea agreement to the record.  Please

24    follow along as she does so.  I may ask you some questions

25    about it after she's concluded.

1      Ms. Jindra.

2          MR. CULUM:  Thank you, Your Honor.

3      United States of America, Plaintiff, versus Keith E.

4  Corbin, Defendant.  Plea Agreement.

5      The United States of America and Keith E. Corbin,

6  defendant, hereby enter into the following plea agreement

7  pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal

8  Procedure:

9      Heading:  Rights Of Defendant.

10     The defendant understands his rights:

11      (a) to be represented by an attorney;

12      (b) to be charged by Indictment;

13      (c) to plead not guilty to any criminal charge brought

14  against him;

15      (d) to have a trial by jury, at which he would be presumed

16  not guilty of the charge and the United States would have to

17  prove every essential element of the charged offense beyond a

18  reasonable doubt for him to be found guilty;

19      (e) to confront and cross-examine witnesses against him and

20  to subpoena witnesses in his defense at trial;

21      (f) not to be compelled to incriminate himself;

22      (g) to appeal his conviction, if he is found guilty; and

23      (h) to appeal the imposition of sentence against him.

24     Heading:  Agreement To Plead Guilty And Waive Certain

25  Rights.

1    Paragraph number 2.  The defendant knowingly and

2 voluntarily waives the rights set out in paragraphs 1(b)

3 through (h) above.  The defendant also knowingly and

4 voluntarily waives the right to file any appeal, any collateral

5 attack, or any other writ or motion including, but not limited

6 to, an appeal under 18 U.S.C. Section 3742 or a motion under 28

7 U.S.C. Section 2241 or 2255, that challenges the sentence

8 imposed by the Court if that sentence is inconsistent with the

9 Guideline calculations described in paragraph 8 of this plea

10 agreement.  This agreement does not affect the rights or

11 obligations of the United States as set forth in 18 U.S.C.

12 Section 3742(b).  Nothing in this paragraph, however, shall act

13 as a bar to the defendant perfecting any legal remedies he may

14 otherwise have on appeal or collateral attack respecting claims

15 of ineffective assistance of counsel or prosecutorial

16 misconduct.  Pursuant to Federal Rules of Criminal Procedure

17 7(b), the defendant will waive indictment and plead guilty at

18 arraignment to a one-count Information to be filed in the

19 United States District Court for the Southern District of Ohio.

20 The Information will charge the defendant with participating in

21 a conspiracy to suppress and eliminate competition by agreeing

22 with other packaged-ice manufacturers to allocate customers in

23 southeastern Michigan and the Detroit, Michigan, metropolitan

24 area, beginning at least as early as March 1st, 2005, and

25 continuing until at least July 17th, 2007, in violation of the

1    Sherman Antitrust Act, 15 U.S.C. Section 1.

2        Paragraph number 3.  The defendant, pursuant to the terms

3    of this plea agreement, will plead guilty to the criminal

4    charge described in paragraph 2 above and will make a factual

5    admission of guilt to the Court in accordance with Federal Rule

6    of Criminal Procedure 11, as set forth in paragraph 4 below.

7    The United States agrees that, at the arraignment, it will

8    stipulate to the release of the defendant on his personal

9    recognizance, pursuant to 18 U.S.C. Section 3142, pending the

10   sentencing hearing in this case.

11       Heading:  Factual Basis For Offense Charged.

12       Paragraph number 4.  Had this case gone to trial, the

13   United States would have presented evidence sufficient to prove

14   the following facts:

15       (a) For purposes of this plea agreement, the relevant

16   period is that period beginning at least as early as March 1st,

17   2005, and continuing until at least July 17th, 2007.  During

18   the relevant period, from March 1st, 2005, until September 1st,

19   2006, the defendant served as vice president of sales and

20   marketing of Artic Glacier International Inc., in parentheses

21   "Artic Glacier," a corporation organized and existing under the

22   laws of the state of Delaware and with its principal place of

23   business in St. Paul, Minnesota.  During the relevant period,

24   after September 1st, 2006, the defendant served as a consultant

25   to Artic Glacier.  During the relevant period, Artic Glacier

1   was a producer of packaged ice in multiple states and was

2   engaged in the sale of packaged ice.  Packaged ice is marketed

3   as a high-grade ice for human consumption and is sold in

4   varying sizes, blocks, big bags, and small bags.

5       (b) During the relevant period, the defendant participated

6   in a conspiracy to allocate customers of packaged ice sold in

7   southeastern Michigan and the Detroit, Michigan, metropolitan

8   area.  In furtherance of the conspiratorial activity, the

9   defendant engaged in discussions with representatives of other

10  packaged-ice producers.  During these discussions, agreements

11  were reached to allocate customers of packaged ice to be sold

12  in southeastern Michigan and the Detroit, Michigan,

13  metropolitan area.

14      (c) During the relevant period, Artic Glacier's sales of

15  packaged ice affecting customers totaled over $10 million.

16      (d) During the relevant period, packaged ice sold by one or

17  more of the conspirator firms, and equipment and supplies

18  necessary to the production and distribution of packaged ice,

19  as well as payments for packaged ice, traveled in interstate

20  commerce.  The business activities of the defendant's employer

21  and its co-conspirators in connection with the production and

22  sale of packaged ice affected by this conspiracy were within

23  the flow of, and substantially affected, interstate trade and

24  commerce.

25      (e) Acts in furtherance of this conspiracy were carried out

1    within the Southern District of Ohio, Western Division.    At

2    least one of the conspiratorial discussions described above

3    took place in Cincinnati, Ohio, which is located within the

4    Southern District of Ohio.

5        Heading:  Possible Maximum Sentence.

6        Paragraph number 5.  The defendant understands that the

7    statutory maximum penalty which may be imposed against him upon

8    conviction for a violation of Section 1 of the Sherman

9    Antitrust Act is:

10        (a) a term of imprisonment for ten years, 15 U.S.C. Section

11    1;

12        (b) a fine in an amount equal to the greatest of $1 million

13    or twice the pecuniary gain the conspirators derived from the

14    crime or twice the gross pecuniary loss caused to the victims

15    of the crime by the conspirators, 15 U.S.C. Section 1, 18

16    U.S.C. Section 3571(b) and (d); and

17        (c) a term of supervised release of three years following

18    any term of imprisonment.  If the defendant violates any

19    condition of supervised release, the defendant could be

20    required to serve up to two years in prison, 18 U.S.C. Section

21    3559(a)(3), 18 U.S.C. Section 3583(b)(2) and (e)(3), and United

22    States Sentencing Guideline, "U.S.S.G.," "Sentencing

23    Guidelines" or "Guidelines," Section 5D1.2(a)(2).

24        Paragraph number 6.  In addition, the defendant understands

25    that:

1    (a) pursuant to U.S.S.G. Section 5E1.1 or 18 U.S.C. Section

2  3663(a)(3) or 3583(d), the Court may order him to pay

3  restitution to the victims of the offense; and

4    (b) pursuant to 18 U.S.C. Section 3013(a)(2)(A), the Court

5  is required to order the defendant to pay a $100 special

6  assessment upon conviction for the charged crime.

7    Heading:  Sentencing Guidelines.

8    Paragraph number 7.  The defendant understands that the

9  Sentencing Guidelines are advisory, not mandatory, but that the

10 Court must consider the Guidelines in effect on the day of

11 sentencing, along with other factors set forth in 18 U.S.C.

12 Section 3553(a), in determining and imposing a sentence.  The

13 defendant understands that the Guidelines determinations will

14 be made by the Court by a preponderance of the evidence

15 standard.  The defendant understands that although the Court is

16 not ultimately bound to impose a sentence within the applicable

17 Guidelines range, its sentence must be reasonable based upon

18 consideration of all relevant sentencing factors set forth in

19 18 U.S.C. Section 3553(a).  Pursuant to U.S.S.G. Section 1B1.8,

20 the United States agrees that self-incriminating information

21 that the defendant provides to the United States pursuant to

22 this plea agreement will not be used to increase the volume of

23 affected commerce attributable to the defendant or in

24 determining the defendant's applicable Guidelines range, except

25 to the extent provided in U.S.S.G. Section 1B1.8(b).

1    Paragraph number 8.  Pursuant to U.S.S.G. Section 6B1.4,

2 the United States and the defendant enter into the following

3 stipulation:

4    (a) The base offense level for the offense to which the

5 defendant is pleading guilty, as established by U.S.S.G.

6 Section 2R1.1(a), is 12.

7    (b) The volume of commerce attributable to the defendant

8 within the meaning of U.S.S.G. Section 2R1.1(b)(2) is more than

9 $10 million, but less than $40 million, which increases the

10 offense level by four.

11    (c) For purposes of U.S.S.G. Section 3E1.1, a three-level

12 reduction of the offense level for the defendant's acceptance

13 of responsibility is appropriate.  However, should the United

14 States obtain or receive additional evidence or information

15 prior to sentencing that, in its sole discretion, it determines

16 to be credible and materially in conflict with this

17 stipulation, then the United States shall no longer be bound by

18 this stipulation.

19    (d) Based on the foregoing, defendant's adjusted offense

20 level for the offense to which he is pleading guilty is 13.

21 The Guidelines incarceration range for offense level 13 is 12

22 to 18 months' imprisonment.  The defendant's appropriate

23 Guidelines fine range is governed by Section 2R1(c)(1).

24    And unfortunately, there's an error there.

25       THE COURT:  I didn't bring it up this time.

1          MS. JINDRA:  Well, it should read section 2R1(c)(1).

2      Heading:  Sentencing Agreement.

3      Paragraph number 9.  The defendant understands that the

4  sentence to be imposed on him is within the sole discretion of

5  the sentencing judge.  The United States cannot and does not

6  make any promises or representations as to what sentence he

7  will receive, and is free to recommend any specific sentence to

8  the Court.  However, the United States will inform the

9  probation office and the Court of (a) this agreement; (b) the

10 nature and extent of the defendant's activities with respect to

11 this case and all other activities of the defendant which the

12 United States deems relevant to the sentencing; and (c) the

13 nature and extent of the defendant's cooperation with the

14 United States.  In so doing, the United States may use any

15 information it deems relevant, including information provided

16 by the defendant both prior and subsequent to the signing of

17 this agreement.  The United States reserves the right to make

18 any statement to the Court or the probation office concerning

19 the nature of the criminal violation charged in the

20 Information, the participation of the defendant therein, and

21 any other facts or circumstances that it deems relevant.  The

22 United States also reserves the right to comment on or to

23 correct any representation made on or behalf of the

24 defendant -- I'm sorry, made by or on behalf of the defendant,

25 and to supply any other information that the Court may require.

1    Paragraph number 10.  The United States understands that

2    the defendant may move for a downward departure for health

3    reasons, based on U.S.S.G. 5H1.4.  The United States reserves

4    the right to oppose such a motion.  Before moving for such a

5    downward departure, the defendant agrees to notify the United

6    States 60 days in advance of sentencing of his desire to do so.

7    He further agrees to waive all physician-patient

8    communications, including all medical examinations performed on

9    him in the last four years, and to submit to an independent

10   physical examination that will be performed for the benefit of

11   the United States and this Court.

12   Paragraph number 11.  If the United States determines that

13   the defendant has provided substantial assistance in any

14   investigation or prosecution in the packaged-ice industry, and

15   has otherwise fully complied with all of the terms of this plea

16   agreement, it will file a motion, pursuant to U.S.S.G. Section

17   5K1.1, advising the sentencing judge of all relevant facts

18   pertaining to that determination and requesting the Court to

19   sentence the defendant in light of the factors set forth in

20   U.S.S.G. Section 5K1.1(a)(1) through (5).  The defendant

21   acknowledges that the decision whether he has provided

22   substantial assistance in any investigation or prosecution of

23   the packaged-ice industry and has otherwise complied with the

24   terms of the plea agreement is within the sole discretion of

25   the United States.  It is understood that, should the United

1    States determine that the defendant has not provided

2    substantial assistance in any investigation or prosecution of

3    the packaged-ice industry, or should the United States

4    determine that the defendant has violated any provision of this

5    plea agreement, such a determination will release the United

6    States from any obligation to file a motion pursuant to

7    U.S.S.G. Section 5K1.1, but will not entitle the defendant to

8    withdraw his guilty plea once it has been entered.  The

9    defendant further understands that, whether or not the United

10   States files a motion pursuant to U.S.S.G. Section 5K1.1, the

11   sentence to be imposed on him remains within the sole

12   discretion of the sentencing judge.  To enable the Court to

13   have the full benefit of all relevant sentencing information,

14   the United States may request that sentencing be postponed

15   until the defendant's cooperation is complete.

16        Paragraph number 12.  The parties agree that they are not

17   aware at this time of any aggravating or mitigating

18   circumstances of a kind, or to a degree, not adequately taken

19   into consideration by the U.S. Sentencing Commission in

20   formulating the Sentencing Guidelines justifying a departure

21   pursuant to U.S.S.G. Section 5K2.0.

22        Paragraph number 13.  In light of the availability of civil

23   causes of action available pursuant to 15 U.S.C. Section 15,

24   the United States agrees that it will not seek a restitution

25   order for the offense charged in the Information.

1    Paragraph number 14.  The defendant understands that the

2  Court will order him to pay a $100 special assessment pursuant

3  to 18 U.S.C. Section 3013(a)(2)(A) in addition to any fine

4  imposed.

5    Paragraph number 15.  The defendant understands that, as

6  provided in Federal Rules of Criminal Procedure 11(c)(3)(B), if

7  the Court does not impose a sentence consistent with either

8  party's sentencing recommendation, he nevertheless has no right

9  to withdraw his plea of guilty.

10   Heading:  Defendant's Cooperation.

11   Paragraph number 16.  The defendant will cooperate fully

12  and truthfully with the United States in the prosecution of

13  this case, the conduct of the current federal investigation of

14  violations of federal antitrust and related criminal laws

15  involving the sale of packaged ice in the United States, any

16  other federal investigation resulting therefrom, and any

17  litigation or other proceedings arising or resulting from any

18  such investigation to which the United States is a party, in

19  parentheses, "federal proceeding."  The ongoing, full, and

20  truthful cooperation of the defendant shall include, but not be

21  limited to:

22   (a) producing all non-privileged documents, including

23  claimed personal documents, and other materials, wherever

24  located, in the possession, custody, or control of the

25  defendant, requested by attorneys and agents of the United

1    States;

2        (b) making himself available for interviews, not at the

3    expense of the United States, upon the request of attorneys and

4    agents of the United States;

5        (c) responding fully and truthfully to all inquiries of the

6    United States in connection with any federal proceeding,

7    without falsely implicating any person or intentionally

8    withholding any information, subject to the penalties of making

9    false statements, 18 U.S.C. Section 1001, and obstruction of

10   justice, 18 U.S.C. Section 1503;

11       (d) otherwise voluntarily providing the United States with

12   any non-privileged material or information, not requested in

13   (a) through (c) of this paragraph, that he may have that is

14   related to any federal proceeding; and

15       (e) when called upon to do so by the United States in

16   connection with any federal proceeding, testifying in grand

17   jury, trial, and other judicial proceedings, fully, truthfully,

18   and under oath, subject to the penalties of perjury, 18 U.S.C.

19   Section 1621; making false statements or declarations in grand

20   jury or court proceedings, 18 U.S.C. Section 1623; contempt, 18

21   U.S.C. Sections 401 through 402; and obstruction of justice, 18

22   U.S.C. Section 1503.

23       Heading:  Government's Agreement.

24       Paragraph number 17.  Subject to the full, truthful, and

25   continuing cooperation of the defendant, as described in

1  paragraph 16 of this plea agreement, and upon the Court's

2  acceptance of the guilty plea called for by this plea agreement

3  and the imposition of the sentence as determined by the Court,

4  the United States will not bring further criminal charges

5  against the defendant for any act or offense committed before

6  the date of this plea agreement that was undertaken in

7  furtherance of an attempted or completed antitrust conspiracy

8  involving the sale of packaged ice or undertaken in connection

9  with any investigation of such a conspiracy, in parentheses,

10  "relevant offense."  The non-prosecution terms of this

11  paragraph do not apply to civil matters of any kind, to any

12  violation of the federal tax or securities laws, or to any

13  crime of violence.

14       Paragraph number 18.  The defendant understands that he may

15  be subject to administrative action by federal or state

16  agencies other than the United States Department of Justice,

17  Antitrust Division, based upon the conviction resulting from

18  this plea agreement, and that this plea agreement in no way

19  controls whatever action, if any, other agencies may take.

20  However, the United States agrees that, if requested, it will

21  advise the appropriate officials of any governmental agency

22  considering such administrative action of the fact, manner, and

23  extent of the cooperation of the defendant as a matter for that

24  agency to consider before determining what administrative

25  action, if any, to take.

1    Heading:  Representation By Counsel.

2    Paragraph number 19.  The defendant has reviewed all legal

3  and factual aspects of this case with his attorney and is fully

4  satisfied with his attorney's legal representation.  The

5  defendant has thoroughly reviewed this plea agreement with his

6  attorney and has received satisfactory explanations from his

7  attorney concerning each paragraph of this plea agreement and

8  alternatives available to the defendant other than entering

9  into this plea agreement.  After conferring with his attorney

10  and considering all available alternatives, the defendant has

11  made a knowing and voluntary decision to enter into this plea

12  agreement.

13    Heading:  Voluntary Plea.

14    Paragraph number 20.  The defendant's decision to enter

15  into this plea agreement and to tender a plea of guilty is

16  freely and voluntarily made and is not the result of force,

17  threats, assurances, promises, or representations other than

18  the representations contained in this plea agreement.  The

19  United States has made no promises or representations to the

20  defendant as to whether the Court will accept or reject the

21  recommendations contained within this plea agreement.

22    Heading:  Violation Of Plea Agreement.

23    Paragraph number 21.  The defendant agrees that, should the

24  United States determine in good faith, during the period that

25  any federal proceeding is pending, that the defendant has

1  failed to provide full and truthful cooperation, as described

2  in paragraph 16 of this plea agreement, or has otherwise

3  violated any provision of this plea agreement, the United

4  States will notify the defendant or his counsel in writing by

5  personal or overnight delivery or facsimile transmission and

6  may also notify his counsel by telephone of its intention to

7  void any of its obligations under this plea agreement, except

8  its obligations under this paragraph, and the defendant shall

9  be subject to prosecution for any federal crime of which the

10  United States has knowledge including, but not limited to, the

11  substantive offenses relating to the investigation resulting in

12  this plea agreement.  The defendant agrees that, in the event

13  that the United States is released from its obligations under

14  this plea agreement and brings criminal charges against the

15  defendant for any relevant offense, the statute of limitations

16  period for such offense shall be tolled for the period between

17  the date of the signing of this plea agreement and six months

18  after the date the United States gave notice of its intent to

19  void its obligations under this plea agreement.

20      Paragraph number 22.  The defendant understands and agrees

21  that in any further prosecution of him resulting from the

22  release of the United States from its obligation under the plea

23  agreement based on the defendant's violation of the plea

24  agreement, any documents, statements, information, testimony,

25  or evidence provided by him to attorneys or agents of the

1   United States, federal grand juries, or courts, and any leads

2   derived therefrom, may be used against him in any such further

3   prosecution.  In addition, the defendant unconditionally waives

4   his right to challenge the use of such evidence in any such

5   further prosecution, notwithstanding the protections of Federal

6   Rules of Evidence 410.

7        Heading:  Entirety of Agreement.

8        Paragraph number 23.  This plea agreement constitutes the

9   entire agreement between the United States and the defendant

10  concerning the disposition of the criminal charge in this case.

11  This plea agreement cannot be modified except in writing,

12  signed by the United States and the defendant.

13       Paragraph number 24.  The undersigned attorneys for the

14  United States have been authorized by the Attorney General for

15  the United States to enter this plea on behalf of the United

16  States.

17       The plea agreement signature is dated October 5th, 2009.

18  It's signed by Keith E. Corbin, Defendant, and attorney

19  Lawrence Lustberg, Esquire.  It's also signed by Kevin Culum of

20  the U.S. Department of Justice, Antitrust Division.

21            THE COURT:  Mr. Corbin, is that your signature at the

22  end of the agreement?

23            THE DEFENDANT:  Yes, it is.

24            THE COURT:  Would you read me the 23rd paragraph of

25  the agreement.

1      THE DEFENDANT:  "This plea agreement constitutes the

2  entire agreement between the United States and the defendant

3  concerning the disposition of the criminal charge in this case.

4  The plea agreement cannot be modified except in writing, signed

5  by the United States and the defendant."

6      THE COURT:  Is that true --

7      THE DEFENDANT:  Yes, it is.

8      THE COURT:  -- what you just read?

9      THE DEFENDANT:  Yes, it is.

10      THE COURT:  In fact, have all the agreements you made

11  in this plea agreement been the truth?

12      THE DEFENDANT:  Yes, they have, Your Honor.

13      THE COURT:  Do you have any questions about this plea

14  agreement?

15      THE DEFENDANT:  No, I don't, Your Honor.

16      THE COURT:  Now, in addition to the Sentencing

17  Guidelines computation that we've discussed and is set forth in

18  the plea agreement, we're also bound to follow the information

19  provided us by the Congress of the United States in determining

20  a sentence in your case, and those elements are set forth in

21  Title 18, Section 3553(a), of the Sentencing Guidelines -- or

22  of the United States Code.  And it's our duty, yours and mine,

23  to determine a sentence that is sufficient but not greater than

24  necessary, to follow the suggestions contained in this statute.

25    And the suggestions that we must consider in fashioning a

1   sufficient but not greater than necessary sentence are these:

2   the nature and circumstances of the offense, your history and

3   characteristics, the need for the sentence imposed to reflect

4   the seriousness of the offense, to promote respect for the law,

5   and to provide just punishment for the offense, to afford

6   adequate deterrence to criminal conduct generally, to protect

7   the public from further crimes you may commit, to provide you

8   with needed educational or vocational training, medical care,

9   or other correctional treatment in the most effective manner,

10  the kinds of sentences available, and the Sentencing Guidelines

11  that we've discussed rather fully.

12       Now, at the time of sentencing I'll receive all available

13  information that will help us determine a just sentence in your

14  case, so it's very important that you give me all the

15  information at sentencing that can possibly make that

16  determination more accurate than we can possibly be.  And it's

17  our responsibility, yours and mine, to make that determination.

18       Now, has anyone made any promise to you, other than the

19  plea agreement, that induced you to plead guilty?

20            THE DEFENDANT:  No, sir, Your Honor.

21            THE COURT:  Aside from the plea agreement, which we

22  just discussed, has any person, including an officer or agent

23  of any governmental agency, any lawyer, any person, suggested

24  to you in any way that you'll receive a lighter sentence or any

25  other form of leniency if you plead guilty?

1           THE DEFENDANT:  No, sir.

2           THE COURT:  Have any threats been made --

3           THE DEFENDANT:  No, sir.

4           THE COURT:  -- that induced you to plead guilty?

5           THE DEFENDANT:  No, sir, they haven't.

6           THE COURT:  Is it fair, then, for me to believe that

7    this decision of yours to plead guilty is your voluntary act

8    and deed?

9           THE DEFENDANT:  Yes, Your Honor, it is.

10          THE COURT:  And is it fair for me to believe that

11   you're pleading guilty here today with a full understanding of

12   the charge against you and the consequences of that plea of

13   guilty?

14          THE DEFENDANT:  Yes, Your Honor, it is.

15          THE COURT:  Now let's refer back to page 3 of the plea

16   agreement.  Now, there's set forth the factual basis of this

17   offense.  Would you please review that very carefully.

18      Are there any additions or corrections or suggestions or

19   explanations you wish to make to those facts set forth?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  I mean, take your time.  There's no rush.

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Mr. Lustberg, has your investigation into

24   the facts of this case established the truth of those

25   statements?

```
 1            MR. LUSTBERG:  Yes, Your Honor.

 2            THE COURT:  Mr. Corbin --

 3            THE DEFENDANT:  Yes, sir.

 4            THE COURT:  -- are these facts set forth here in this

 5  plea agreement that we've just discussed --

 6            THE DEFENDANT:  Yes, Your Honor.

 7            THE COURT:  -- the truth?

 8            THE DEFENDANT:  Yes, Your Honor.

 9            THE COURT:  Are they true?

10            THE DEFENDANT:  Yes, they are.

11            THE COURT:  Is it fair, then, for me to believe that

12  you're pleading guilty here today because you are, in fact,

13  guilty --

14            THE DEFENDANT:  Yes, I am.

15            THE COURT:  -- of a violation of Title 15, Section 1,

16  of the Sherman Antitrust Act?

17            THE DEFENDANT:  Yes, sir, I am.

18            THE COURT:  Is there anything else you wish me to

19  discuss with the defendant before I make my findings in the

20  matter, Ms. Jindra?

21            MS. JINDRA:  No, Your Honor.  Thank you.

22            THE COURT:  Mr. Lustberg, anything you wish to place

23  on the record?

24            MR. LUSTBERG:  No, Your Honor.  Thank you very much.

25            THE COURT:  Mr. Corbin, any questions at this time?
```

1          THE DEFENDANT:  No, sir.  You've been very explicit.

2   Thank you.

3          THE COURT:  The trial judge has observed the

4   appearance and responsiveness of Mr. Corbin, the defendant, in

5   giving his answers to the questions asked.  Based on such

6   observation and the answers given, the Court is satisfied that

7   the defendant is in full possession of his faculties.

8      He is suffering from some illnesses that are apparent.  I

9   don't see them at this point in time, but I take your word that

10  you are suffering from these maladies.

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  But that does not affect the determination

13  at this time, and it does not affect your reason, your ability

14  to reason.

15         THE DEFENDANT:  Correct.

16         THE COURT:  That you're not under the influence of

17  narcotics or alcohol.

18         THE DEFENDANT:  No, sir.

19         THE COURT:  That you understand that Title 18, United

20  States Code, Section 3553 controls the way we will pronounce a

21  sentence in this case, and that includes the Sentencing

22  Guidelines, which are discretionary.

23         THE DEFENDANT:  Yes, sir, I do.

24         THE COURT:  That you understand the proceedings in

25  which you are engaged, that you understand the nature and

1 meaning of the charge and the consequences of the plea of
2 guilty, and that you are aware of all plea negotiations
3 undertaken on your behalf.
4          THE DEFENDANT:  Yes, Your Honor, I am.
5          THE COURT:  Do you have any questions at this time?
6          THE DEFENDANT:  No, sir, I don't.
7          THE COURT:  The trial judge therefore finds that the
8 plea has been made voluntarily, with understanding of the
9 nature of the charge and the consequence of such plea.  I will
10 accept your guilty plea and enter a judgment of guilty to a
11 violation of Title 15, United States Code, Section 1, the
12 Sherman Antitrust Act.
13     The matter will be referred to the United States Department
14 of Probation for a presentence report.  The Court will reserve
15 ruling on the plea agreement until after all the information is
16 assembled, and the Court can make that determination at
17 sentencing.
18     The matter will be continued for sentencing until Tuesday,
19 February the 2nd, 2010, at 10:00 AM.  February 2nd, 2010, at
20 10:00 AM.
21     The probation officer will provide us with a timeline so
22 that we can collect all the information that we need to make a
23 just sentence in your case.
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  Please assist in any way you can, and

1  please present to me at sentencing any information that will

2  assist us in pronouncing a just sentence --

3          THE DEFENDANT:  I will, Your Honor.

4          THE COURT:  -- in your case.  And please, if we run

5  out of time on the timeline, why, please draw it to our

6  attention.  Mr. Lustberg and Ms. Jindra can draw that to my

7  attention and we can adjust it, but let's try to meet that

8  sentencing date if we possibly can.

9          MR. LUSTBERG:  Yes, sir.

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Now, do you have any questions at this

12  time?

13         THE DEFENDANT:  No, sir, I don't.

14         THE COURT:  I understand that there has been a bond

15  report provided to the parties.  Is that correct?

16         MS. JINDRA:  Yes, Your Honor.  We've reviewed that.

17         MR. LUSTBERG:  Yes, Judge.

18         THE COURT:  Have you had a chance to look at the

19  information contained in the bond report?  And, please, if

20  there are any corrections, please point them out to me.  I'd

21  appreciate it.

22         MR. LUSTBERG:  Judge, we have reviewed it and it's

23  accurate.  Thank you, Your Honor.

24         THE COURT:  Any comment on the report at this time?

25         MS. JINDRA:  No, Your Honor.  We have reviewed it.  We

1    don't have any comments.

2            THE COURT:  Any comment on the report?

3            MR. LUSTBERG:  No, Judge.  We would urge the Court to

4    accept their recommendation.

5            THE COURT:  Well, the Court will accept the

6    recommendation, and I believe it also comports with the plea

7    agreement in the matter, and I will therefore set those

8    conditions of the bond at this time.

9        And there is a part of this document that is the advice on

10   penalties and sanctions, and I am going to ask you to review

11   them with Mr. Lustberg and if you have any questions about it.

12   If you accept them, why, then sign the document and we'll

13   proceed.

14       The conditions are that you shall not violate any federal,

15   state, or local law while on release, that you must immediately

16   advise the Court, defense counsel, and the U.S. Attorney in

17   writing before any change in address or telephone number, that

18   you promise to appear in court as required and to surrender to

19   serve any sentence imposed, that you execute your own

20   recognizance bond, that you obtain no new passport.

21       And it's my understanding that your passport has expired.

22           THE DEFENDANT:  Yes, Your Honor, it has.

23           THE COURT:  And you make that representation to me

24   under oath?

25           THE DEFENDANT:  Yes, I do, Your Honor.

1          THE COURT:  That you refrain from possessing a

2    firearm, destructive device, or other dangerous weapon, that

3    you refrain from any excessive use of alcohol, that you refrain

4    from the use or unlawful possession of narcotic drugs or other

5    controlled substances unless prescribed by a licensed medical

6    practitioner.

7          MR. LUSTBERG:  Judge, if I may, I just realized when

8    Your Honor said that that there is one issue, which is Mr.

9    Corbin has been a hunter and he has firearms in his home.  We

10   will endeavor within the next week, if that's okay with the

11   Court, for him to sell those or otherwise dispose of them so

12   they won't be in his home.  He's not a risk of any violation.

13         THE COURT:  If he can put them out of his possession,

14   that's all that's required.

15         MR. LUSTBERG:  All right.  I just wanted to make sure.

16   It just may take a day or two to accomplish that.

17         THE COURT:  The problem being that I don't want him to

18   commit another federal crime --

19         MR. LUSTBERG:  No.

20         THE COURT:  -- before we get started in this.

21         MR. LUSTBERG:  No, I don't think we have to worry

22   about that, Your Honor.

23         THE DEFENDANT:  Larry discussed that with me.  That

24   won't take place.

25         THE COURT:  All right.  Well, I appreciate that.  And

1    it is a problem, and it is a situation that is difficult

2    sometimes to carry out.

3        I'll hand you these papers, and if you'll go over them.

4        And then, Mr. Lustberg, if you'll explain the advice and

5    penalty section, why, we'll proceed to further conclude the

6    matter.

7        (Mr. Lustberg and the defendant confer privately.)

8            MR. LUSTBERG:  Your Honor, I've explained the

9    penalties and the sanctions section of the order setting

10   conditions of release to Mr. Corbin.  He has executed that

11   document, and I'll hand it back to the Court.

12           THE COURT:  Thank you.

13       Let the record show that the Court observed Mr. Corbin

14   signing the document here in open court.

15       And I'll ask you to acknowledge to me that that is your

16   signature and you accept the conditions.

17           THE DEFENDANT:  Yes, it is, Your Honor.  Yes, Your

18   Honor.

19           THE COURT:  Do you have any questions at this time,

20   sir?

21           THE DEFENDANT:  No, sir, not -- I don't, Your Honor.

22           THE COURT:  Is there anything further the United

23   States wants to do or wants the Court to do in this matter?

24           MS. JINDRA:  No.  Thank you, Your Honor.

25           MR. LUSTBERG:  Nothing further, Judge.  Thank you very

1    much for your courtesy.

2            THE COURT:  The last time, any questions?

3            THE DEFENDANT:  No, sir, Your Honor.  I appreciate how

4    kind you've been to me.

5            THE COURT:  Okay.

6        The defendant is ordered released after processing, and the

7    matter is continued until February the 2nd at 10:00 o'clock,

8    2010.

9            MR. LUSTBERG:  Thank you, Your Honor.

10            MS. JINDRA:  Thanks, Your Honor.

11            COURTROOM DEPUTY:  All rise.  This honorable court is

12    now in recess.

13        (Proceedings concluded at 3:35 PM.)

14                            - - -

15                    C E R T I F I C A T E

16        I, Luke T. Lavin, RDR, CRR, the undersigned, certify

17    that the foregoing is a correct transcript from the record of

18    proceedings in the above-entitled matter.

19

20                            s/Luke T. Lavin
                            Luke T. Lavin, RDR, CRR
21                            Official Court Reporter

22                            - - -

23

24

25